**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** : | |
| : | |
| Plaintiff, : | |
| : | **Case No: 2:24-cr-92** |
| vs. : | |
| : | **JUDGE MARBLEY** |
| **MARK ANGLEMYER,** : | |
| aka "JR," : | |
| : | |
| Defendant. : | |

**GOVERNMENT'S SENTENCING MEMORANDUM**

Now comes the United States of America, by and through undersigned counsel, and hereby submits its Memorandum in aid of sentencing.

**I.    BACKGROUND**

On May 30, 2024, a federal grand jury returned an Indictment charging Defendant **MARK ANGLEMYER JR.,** in Count One with Conspiracy to Distribute and Possess with Intent to Distribute Cocaine and Anabolic Steroids, in violation of 21 U.S.C. §§ 846, 841(a)(1) and (b)(1)(C), in Count Two with Possession with Intent to Distribute Anabolic Steroids, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C), and in Count Four with Conspiracy to Use a Communication Facility in Commission of a Drug Felony, in violation of 21 U.S.C. §§ 846, 843(b) and (d). On April 11, 2025, Defendant entered a plea of guilty to Count One of the Indictment pursuant to a Rule 11(c)(1)(A) plea agreement. The plea agreement contained an attachment, which detailed the factual statement of Defendant's offense conduct in support of his guilty plea. The plea agreement also contained the parties' agreement to a base offense level of 30, a two-level increase for possession of a firearm, a two-level increase for maintaining a

1

premises for manufacturing or distributing a controlled substance, a two-level increase for leadership, and a three-level reduction for acceptance of responsibility.

The Probation Officer released the final Presentence Investigation Report ("PSR") on July 3, 2025. Sentencing in this matter is scheduled for December 9, 2025.

II. **PRESENTENCE INVESTIGATION REPORT AND OUTSTANDING OBJECTION**

The United States has reviewed the PSR. The Probation Office calculated a base offense level of 30, applied a two-level enhancement for possession of a firearm, applied a two-level enhancement for maintaining a premises, applied a four-level enhancement for leadership, and applied a three-level reduction for acceptance of responsibility. At a criminal history I, the resulting guidelines is 168 to 210 months. In addition, the guidelines range for a term of supervised release is three years, per U.S.S.G. § 5D1.2(a)(2). Defendant objects to the application of a four-level leadership enhancement as opposed to a two-level enhancement under U.S.S.G. § 3B1.1(c). While the Government does not disagree with the Probation Officer's analysis, it intends to abide by the plea agreement and joins in the objection accordingly. Should the Court sustain the joint objection of the parties, the total offense level would be 33, resulting in a guidelines range of 135 to 168 months.

III. **SENTENCING FRAMEWORK**

After *Booker v. United States*, 543 U.S. 220 (2005), district courts are to engage in a two-step sentencing procedure.[1] Courts are first to determine the applicable guidelines range, then consider the applicable guidelines range—along with all of the factors listed in 18 U.S.C. § 3553(a)—to determine what sentence to impose. *Gall v. United States*, 552 U.S. 38, 49–50

---

[1] Effective November 1, 2025, the Guidelines have been amended to excise departures from the sentencing analysis; many of the factors in Chapter 5 remain relevant under the § 3553(a) factors, rather than as departures.

(2007); *Rita v. United States*, 551 U.S. 338, 351 (2007). The central command to district courts in imposing a sentence is to fashion one that is sufficient, but not greater than necessary, to meet the goals set forth in 18 U.S.C. § 3553(a).

Section 3553(a) further delineates seven factors the Court must consider in fashioning an appropriate sentence: (1) the nature and circumstances of the offense/history and characteristics of the defendant; (2) the statutory purposes of sentencing; (3) the kinds of sentences available; (4) the kinds of sentences and sentencing ranges as set forth in the Sentencing Guidelines; (5) Sentencing Guidelines policy statements; (6) the need to avoid unwarranted sentencing disparities; and (7) the need to provide restitution to any victims of the offense. 18 U.S.C. § 3553(a).

IV.     **ANALYSIS AND RECOMMENDATION OF THE UNITED STATES**

As noted above, there are seven factors the Court is to consider during sentencing, pursuant to 18 U.S.C. § 3553(a). The Government submits that while the Court should consider each of the above factors, the following facts are highly pertinent to the Court's consideration of the nature and circumstances of the offense, as well as the history and characteristics of the defendant.

The nature and circumstances of the offenses are described in great detail in both the PSR at ¶¶ 23 to 50 and Attachment A of the plea agreement. In summary, for nearly five years, Defendant ran a drug trafficking operation out of Waverly, Ohio distributing both anabolic steroids and cocaine. As part of his operation, Defendant imported raw materials from China to manufacture the anabolic steroids, produced the powder and liquid steroid mixtures at various co-conspirators' residences in Pike County, and shipped them to customers across the country utilizing the United States Postal Service. As time progressed, Defendant expanded his operation

to include obtaining kilogram quantities of cocaine from California for local distribution in Waverly. When his original cocaine suppliers were arrested by federal authorities in California in June 2023, well before the end of the investigation in Ohio, Defendant and Co-Defendant Arin Sodaro attempted to obtain cocaine from new suppliers in Colombia. Defendant and Sodaro flew to Colombia in July 2023 and shipped cocaine back to themselves but were ultimately unsuccessful when the parcels were seized by Colombian authorities at the border. During the period of the conspiracy, Defendant employed a number of people to assist in the manufacture and distribution aspect of his operation, including the charged co-defendants.[2] The drug money always made its way back to Defendant, either in cash or by deposit into one of his various bank accounts. At the time of his arrest on June 5, 2024, law enforcement searched Defendant's primary residence, where he lived with his wife and minor son, and located anabolic steroids, a pill press, steroid packaging and production materials, and a firearm. Additionally, eight firearms belonging to Defendant were also located in Sodaro's house, where bulk steroids and manufacturing equipment were also recovered. In total, Defendant's drug trafficking organization mailed over 2,500 parcels containing steroids and conspired to distribute approximately 11 kilograms of cocaine from late 2019 through the middle of 2024.

Defendant is 42 years old and has lived in Waverly his entire life. He has one teenage son from a prior marriage and a 9-year-old son, who is nonverbal autistic, with his current wife. Defendant describes a poor relationship with his father, who was verbally and physically abusive towards him as a child but a good relationship with his mother. He recalls that he was sexually promiscuous at a young age but provided inconsistent information regarding whether that was related to prior sexual abuse. Defendant is in good physical health but reports a history of

---

[2] On May 30, the Court sentenced Heather Howell to time served. On August 19, the Court sentenced Blake Mankin to 12 months and one day imprisonment. Arin Sodaro is currently pending sentencing.

depression and anxiety, including past instances of suicidal ideation. He started using anabolic steroids in 2011, began abusing alcohol in 2017, and added cocaine in 2019. Defendant continued to abuse all three substances up until his arrest in the instant case. He has a high school diploma and thereafter took some college courses at Hocking College. Defendant graduated from the Basic Peace Officer Academy in 2004 and worked as a police officer with Pike County Sheriff's Office, Piketon Police Department, the Waverly Police Department, and the Wellston Police Department. He also worked as a security officer at American Centrifuge Plant, which required a security clearance through the Department of Energy. Prior to the instant offense, he was also employed at Walmart, Adena Health Systems (as a security officer), and Dollar General. Defendant owned and operated a food truck during the period of the conspiracy when he was primarily selling drugs for income and planned to open a brick-and-mortar restaurant with Sodaro before they were arrested. Defendant is currently a driver for Larry Veach Trucking.

 It is not lost on the Government that this case involves distributing anabolic steroids and cocaine and not some of the more dangerous substances the Court often sees before it. But what Defendant was involved in was most certainly not nothing. He ran a drug trafficking organization that spanned nearly five years, and included importing precursor chemicals from China, travelling across the country and even to Colombia to secure narcotics, and sending several thousand packages of controlled substances across the United States utilizing the mail. Defendant was a resourceful and large-scale drug dealer. This is in addition to the normal day-to-day drug transactions Defendant or his co-conspirators (at his direction) were completing on a localized basis. While the Government has no doubt that Defendant suffered from addiction issues, the conduct in this case goes well beyond just feeding an addiction.

 While only a snapshot of Anglemyer's Facebook conversations and the messages

recovered from his phone and iCloud were included in the PSR and the Statement of Facts, a comprehensive review of those conversations provide that Defendant thrived on the power imbalance he perceived between himself and the other individuals living in the small village of Waverly. He viewed himself in the image of an alpha male—often referring to himself in terms of "wolf" and "viking." While Defendant manipulated many of the people around him, the most susceptible seemed to be the women he was romantically involved with throughout the course of the conspiracy, including two of the charged co-conspirators. Defendant may have been a relatively small fish compared to dealers in big cities, but he often bragged about his connections to "the cartel" and his frequent travel to Los Angeles and Mexico.

Defendant has no criminal history with one important exception. In February 2022, Defendant was stopped by law enforcement in Arkansas and found to be transporting over 300 pounds of marijuana. He ultimately pled to a lesser charge of possession of drug paraphernalia and was given a 36-month suspended imposition of sentence and a $1,000 fine. And although he picked up that conviction during the middle of the instant drug conspiracy, it did not deter him. In fact, it may have emboldened him. By April 2022, Anglemyer and his drug trafficking organization evolved to receiving kilogram quantities of cocaine from southern California for further distribution in the Southern District of Ohio.

Aside from the nature and circumstances of the offense conduct, perhaps one of the most aggravating factors at play in this case is that Defendant has demonstrated that he is able to earn good money performing legitimate work to support his family. And one of the legitimate jobs Defendant previously held was police officer—a career he only fully abandoned approximately four years before his foray into taking up the occupation of drug dealer. Defendant undoubtedly knew what he was doing was wrong but acted like he was above the law he once took an oath to

uphold. The United States is empathetic to the effect Defendant's forthcoming absence will have on his minor son. However, the challenges his son faces are not new—they were present during the entirety of Defendant's conduct and seemed to have no bearing whatsoever on his behavior. Even after Defendant's arrest, he allowed Sodaro to live at his residence in violation of both their conditions of pretrial release. Whether Defendant's criminal conduct was ultimately driven by greed, power, ego, or perhaps all three, he has no one to blame except himself for his current predicament. Unfortunately, others around him will also suffer the consequences as a result.

All of that said, consideration of the most relevant sentencing factors warrants a sentence near the bottom of the guidelines range in this case. Such a sentence would properly consider the nature and circumstances of Defendant's extensive offense conduct, as well as Defendant's history and characteristics. The United States is hopeful that a sentence near the bottom of the guidelines range will have a deterrent effect on Defendant, as well as others who believe the rewards of drug trafficking outweigh the risks.

### V.     CONCLUSION

For all of the foregoing reasons, the United States respectfully submits that a term of imprisonment near the bottom of the guidelines range of 135 months followed by a term of supervised release, would be sufficient but not greater than necessary to achieve the statutory goals of sentencing.

Respectfully submitted,

DOMINICK S. GERACE II
United States Attorney

*s/ Nicole Pakiz*
NICOLE PAKIZ (0096242)
DAMOUN DELAVIZ (PA 309631)
Assistant United States Attorneys

                                        303 Marconi Boulevard, Suite 200
                                      Columbus, Ohio 43215
                                      (614) 469-5715
                                      Fax: (614) 469-5653
                                      Nicole.Pakiz@usdoj.gov
                                      Damoun.Delaviz@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on this 1st day of December 2025, a copy of the foregoing Government's Sentencing Memorandum was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.

                                      *s/ Nicole Pakiz*
                                      NICOLE PAKIZ (0096242)
                                      Assistant United States Attorney